Good afternoon, Illinois Appellate Court, First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding, case number 20-0919, People v. Robert Schultz. Good afternoon. I'm Justice Michael Hyman. With me is Justice Aprilia Paczynski and Justice Mary Ellen Coughlin. We will conduct ourselves as if we were in the courtroom and that we probably may interrupt you. Please finish your statement, and then if you would go to our questions. The appellant has 20 minutes, reserve some of that time for rebuttal. Let us know how much when you reduce yourself. My apologies, Your Honors. Can you see, you can see and hear me now? We can see and hear you. Okay, great. I apologize. No problem. No need to apologize. We're used to the technicalities. So Mr. Steinberg, will you please introduce yourself and how much time you want for rebuttal? Mr. Steinberg, representing Robert Schultz. I'm the officer, the appellate defender. I would like three minutes of rebuttal, Your Honor. Good afternoon, Your Honors. Good afternoon, counsel, Assistant State's Attorney Julie Rixey on behalf of the people. Thank you very much. Mr. Steinberg, you may proceed. Thank you. Thank you. May it please the court. This court should reverse and remand this case for second stage proceedings, because at the first stage of proceedings, Robert Schultz provided an arguable basis as 25 year sentence without the opportunity for to earn good time credit or for parole violated Illinois, Illinois is proportionate penalties costs. We recognize that that after the opening brief in this case, the decisions of Dorsey was issued, as well as people be Jones by the Illinois Supreme Court. However, those decisions do not foreclose relief here. Import. Importantly, Schultz is making an as applied challenge cut Illinois constitutional challenge to actually sentencing post. Don't do not foreclose this type of challenge in Jones, the Illinois Supreme Court only considered Jones's challenge on eighth amendment grounds, and they held that due to Mississippi Jones, that the discretionary 50 year 58 year old 50 plus sentence in that case actually complied with the eighth amendment terms. Jones was actually challenging the threat of a life sentence. He did not challenges. The part that was imposed. I'm going to direct your attention to page eight to paragraph, 18 of the Jones opinion in there the Illinois Supreme Court said if the statutory scheme had actually been applied in this case, and set and set petitioners if a mandatory life sentence would have been imposed petitioners argument would have presented a claim, and that we could have reviewed the merits here. Here, unlike, unlike Jones, he's shoulders actually challenging the sentence imposed by the court. He's not challenging and a hypothetical sentence that he was facing means arguing that ti under Jones, despite his plea he's still able to argue this, a court would never allow a defendant to agree to an unconstitutional excessive sentence that can result in a host of results. Here, let's look at the facts. Jones. Mr Schultz is got a 25 year sentence for murder. It is, while is technically not a de facto life sentence under murder. It does have grounds for relief under Dorsey Dorsey stress the importance of good time credit, but the Darcy was a case of 40 plus. We do not have, but not even close to 40. So, how does that even have anything to do with this case this this case is 25 years, which is only five years, five years over the minimum of 20. We're looking when, when Mr Schultz is a challenge in his plea he wants stability for rehabilitation, and also the state on page 20 he wants the ability for rehabilitation. Right. Okay. And isn't it true that this results wave is pre sentencing information report investigation pre sensing investigation. When we review the. Yes, Your Honor. Okay, so he he waived. He waived that and that would have had that information about rehabilitation. Now, so you're saying, even though he waived that we're supposed to, what are we supposed to do with that waiver that waiver only applies to the PSI. But again, without the PSI that's what we'll get into the background and so forth by rehabilitation, he waived it, he, he knew what he was, there was this was a deal that was cut. Right. And he knew what he was doing. You're not saying he didn't know about. Yes. Justice Hyman I am actually saying he did not know he was waving a proportion of penalties clause when you review the colloquy. They go over his right to a jury trial, they discuss the benefits of a jury trial is just a he's waving it. They also discuss his PSI. When I, when I review the plea colloquy. When I review the sentence in order to review the jury waiver form. I did not see an express and no involuntary waiver up to right to unconstitutional unconstitutional sentence. How's it set in some constitution, I don't understand when he's given up that right. Perhaps I can narrow this down a little bit. If you'll excuse me just as I know when he went the PSI, he was waving everything that had happened in the past, and what I'm hearing attorney Steinberg say is that he wants the opportunity. Now, from the time he started to serve a sentence, and into the future to show that he has become rehabilitated. So it's a question of PSI past or rehabilitation future. Is that a correct summary Mr center. Yes, and the PSI is a separate issue that whether he waived a constitutional right to a proportion of penalties clause argument. Okay. And your argument is based in part on the Miller string of cases that base their argument on the fact that use homicide defendants should have the opportunity to show that they have become rehabilitated. Not that they should get out of jail free it's not to get our jail free card, it's they should be allowed to go to the pro board and in fact the only legislature recognize that when they get set line 2019, only they didn't take it and pay attention to anybody like Mr Schultz who was sentenced before 2019. Yeah. Correct. They did not make it retroactive. Here, I mean it's kind of an irony that someone who gets sentenced after that after Mr Schultz could potentially get the benefit of good time credit or review of parole in 20 years on Mr Schultz cannot. And I want to go back to Dorsey Dorsey stressed, and they're the defendant argued that good time credit to not show an ability for rehabilitation. However, the Illinois Supreme Court actually expressly disagreed with that. They actually found that good time credit which is currently denied to Mr Schultz could benefits now a safer prison populations, and it also shows that defendant has the ability to be rehabilitated, to be a better, a better comply with society's rules on the way out by denying Mr Schultz good time credit in this case, it doesn't serve the proportionate penalties clause, which is broader than the Eighth Amendment, and the fact that on page 24 the state's great the state met state discusses the decision to remove the firearm enhancement in this case, and they said it was a goal to kind of, in light of his youth and potential rehabilitative potential, the best way to fulfill that we're going to potential is to create positive incentive for defendants just like Mr Schultz to show that he can get out, because we know the fact, yes he's not serving a 40 year sentence, a more than de facto life. We know he's going to get out in 25 years when he's about 4546. As a society, we, as a society and they will know a constitution required provide an arguable basis for first aid that that he should be allowed to demonstrate his rehabilitation. There's no case that Orthman one, which is that part that you rely on has been vacated so it's as if it's no longer there. Is there any justice. I mean, you know that you and I agree on a lot of things, but often, what we don't agree on is that the court didn't like the argument about truth and sentencing what we do agree on is that they said it was dicta and had to come out. So really, but if you can't rely, but they vacated the dicta part, they didn't say they just vacated it because it was dicta, then you can't rely on it, but that my point is you can't rely on something that's not there. But you can still rely on the reasoning you can still say well well you can make your own reason there's no cases says so, but my question is that every case that I'm aware of, including the two cases that the state recently cited as additional authority, is there any case that that's good that you can rely on that has allowed the as applied and under these circumstances in Illinois Daniels Daniels was a sentence of over 40 years, but it did allow a case to be well, that's kind of a big distinction. Isn't it? Well, the big that is a distinction, but the fact that you can't rely on that. So, I think that and I'm interested in this too. What what case are you relying on? What's your best case for your arguments? Your honor, it's honestly not only Daniels, but it's also the reasoning from Dorsey and the Miller line cases and. I mean, it kind of sounds like you're acknowledging that the case, excuse me. That the current case law doesn't support any of your arguments, but you're hoping that we choose to ignore it, but we can't do that. Well, I'm not, I'm not at the 1st stage of post conviction proceedings. All the defendant has to show is an arguable basis. In law, in fact, other than Daniels Daniels, your best case that you're relying on. Mr Steinberg right now, Daniels and the reasoning from Dorsey regarding the benefits of a proportion of of good time credit. This court should not ignore the benefits, but you could also rely on the legislature's amendments in 2019 and the fact that for political reasons, the legislature decided not to make them retroactive. But that doesn't mean that they shouldn't have been retroactive and it certainly shows that the legislature is aware of the fact that juvenile homicide defendants should have an opportunity to prove that they've been rehabilitated before the parole board. Yes. That legislative change, as well as a proportion of penalties clause shows Illinois is ever evolving view on sensing sense. The obviously frames of obviously views of sensing have changed since beginning of time, Illinois has chosen to focus on the real balancing punishment with rehabilitative potential. And here we know Mr Schultz has getting out Mr Schultz has shown throughout his time in prison that he has ability to move on from those factors. Normally, if you look at the Miller factors and Harris factors, they apply in this case, he was 17 years old at the time of the offense. He was, he was part of a gang, he did not have the power to extricate himself from, he did not have a life sentence. All those cases that you're talking about the whole line of case federal cases all have to do with life sentence. Right. Yes, correct. Yes, you're on. Okay. So does Dorsey, that's part of what Dorsey is all about to is, you know, when is that 40 years. How do we determine. And this by far is not a life sentence and it seems to me you got a square peg you're trying to put in a round hole. The fact that Mr Schultz is not serving a life sentence that he'll be released in 25 years that he's not locked behind a key and will have to function in society is all the more reason that ascending scheme and a punishment scheme needs to include good time credit, or an opportunity. But we don't. How can we well. So you're saying he got only he has to serve 20 years you would agree to that. Currently right now under truth and sensing he has to serve all 25. But you're saying the minimum would be 20 years. Is that what you're saying. Under Illinois, if he was sentenced if you if you win this case, if we ruled in your favor. Are you saying you can get under 20 years. Possibly, but all I'm asking my client is asking for remand for second stage proceedings for for for Mr Schultz to put together an evidentiary rule on that. And what would that show us show the court. It would conduct probably a full PS, it might conduct a full PSI, it might conduct psychological examination but the PSI and all of that was way. So you see the new you want to have your cake I mean if he didn't waive it. Then you maybe your argument would have been a lot different here. But can he waive it and then take advantage of that waiver. Isn't that what he's doing. Mr Schultz is looking at ever evolving Illinois case law, whether what hasn't involved that much I mean from what you're saying Daniels being their best case. What is involved is that the statute is involved, but people, you know, we don't go back. Follow the law. Okay. How do we get to where you want to go. How do we get to that second stage and what, what is the key fact or case that gets us to be able to rule in your favor. It's the fact under reason from Otham, and in other cases. This case is this case has reversed proceedings proportion of penalties clause and Aikens or Barnes and a couple of cases not cited in the brief involving the mandatory firearm enhancement application of that juveniles, that's currently debate that's currently in debate there's cases such as Hillary that disagree with those are the proportion of penalties clause Aikens and Barnes were actually less than de facto life sentence. I apologize those cases were not cited in the briefs, but reasoning from those cases about the proportion of penalties being more expansive and being focused on rehabilitative potential. Importantly, cases such as Dorsey is an eighth amendment challenge. They never actually reached the proportion of penalties clause argument. And at no point during this plea agreement during the plea agreement was an express waiver by Mr Schultz, that he said, I waive any double jeopardy constitutional violations, I waive a proportion of penalties clause investigation. I'm looking at the jury waiver now, I'm looking at the plea colloquy. I don't. At no point does he agree to serve an unconstitutional sentence, or be imposed as a slave, or any other thing that would be. If you take contract principles to the fullest extent. Can't agree to an illegal term of years. Here Mr Schultz is challenging the sentence imposed, and the opportunity that truth and sentencing denies him the to earn the time credit and show his rehabilitative potential. This court to reverse and remand and allow him the opportunity for this for him to show how to that TIS is unconstitutional as applied to the facts of his case. Thank you very much. Any other questions. Okay, thank you very much. You may proceed. Thank you. Thank you. May it please the court, your honors the circuit court summary dismissal of the petition at the first stage was proper. The petitioner did not present a gist of a constitutional claim because his petition lacked an arguable basis in fact, or law. Therefore, we're asking the court to affirm the summary dismissal for three reasons. First of all, pursuant to our Supreme Court's decision and people versus Jones the petitioners constitutional claims which were premised on the line of Miller cases were waived by his knowing involuntary plea Jones is dispositive in this matter your honors because the petitioner knowingly involuntarily entered into a negotiated plea, and he does not now nor he has he ever alleged any jurisdictional issues or malfeasance on the part of the state. Under our Supreme Court's reasoning and Jones the petitioner here gained the present benefit of his plea agreement, including the dismissal of the 25 year firearm enhancement, and also the trial court exercise its discretion by accepting that plea. Therefore, he is now foreclosed from raising a constitutional claim to his sentence. At the time that people filed their brief, your honors it was shortly after the Jones decision so several of those cases were ruled 23 cases, which is why I filed a motion to cite additional authorities which are honors granted last week, giving me permission to cite to the first district published published case of people, the Watson. Watson is factually similar to this matter and Watson the petitioner was 17. He pled guilty to first degree murder, he received a 32 year sentence. He also as the petitioner here does relies on often the vacated portion of men claiming that truth in sentencing, as it applies to him violated the eighth and the proportionate penalties class. His petition also was summarily dismissed, and the petitioner appeal that this court held citing to Jones that by accepting a plea agreement and pleading guilty the petitioner waived the post conviction claims he raised in his petition. Therefore here pursuant to Jones and Watson the petitioner has also waived his constitutional challenges to his 25 year sentence. The second reason your honors were asking that you affirm the summary dismissal is that the petitioner waived his proportionate penalties challenge for failure to raise it in his petition, as the court is obviously well aware any claim of a denial of a petitioner here made an eighth amendment violation claim, particularly pursuant to let's assume that we're going to get to the heart of the issue. What what is your third. Sure. So, your honors, even if you did not find that he waived his proportionate penalties charge under either the eighth amendment or the proportionate penalty claim petitioners claim fails, because petitioners as applied challenge this premise on Miller. Therefore, he must show that his sentence is a life sentence whether that be natural de facto mandatory discretionary. He cannot do that. And since he cannot show that he had a de facto life, he cannot make an arguable Miller claim, because Miller does not extend relief to a juvenile who is not subject to a life sentence. This has been clearly laid out in the Supreme Court, Illinois Supreme Court cases and United States Supreme Court cases of Miller Dorsey and buffer. The truth and sentencing does not violate the eighth or the proportionate policies when a juvenile receives a non life sentence, and this is because this was laid out in Dorsey, because the sentence of less than 40 years still affords a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, and it also satisfies the restorative objective of the proportionate penalties class is famous risky How is that possible if he's required to serve 100% of this 25 year sentence. How does he get the opportunity to demonstrate rehabilitation, if no matter what he does, if he walks on water, he still has to serve 100% of 25 years. I don't understand the statement. Sure, your honor the the Supreme Court has has drawn that bright line at 40 years as being the amount of years that still allows a person coming out of jail to have the opportunity to gain the release demonstrated on the maturity and rehabilitation So that was a line set by the court. And in this matter because the defendant is relying on the protections of Miller he states in his brief and an oral argument that sort of the issue for him is that the court didn't consider his age and maturity, his circumstances of his childhood is rehabilitation potential when they issue their 25 year sentence. So he's claiming that actually the court said, Oh, and you'll be able to get good time, which was not correct the judge was wrong. The judge thought that he did not have to serve 100%, but he does have to serve 100% so getting back to my walking on water. What does he have to do to get out before 25 years anything, nothing. I'm sorry your honor I just want to make sure I'm following your question. When you say the court said that he did not have to serve 100% I'm, could you clarify. The court said, Oh, you're, you'd be able to appeal for parole I think those were the words written down. Right now, the court made a mistake on that. He could apply for parole, but he cannot. He has to serve 100% of 25 years, no matter what he does, he petitioner was informed during the plea, the, that this was subject to truth and sentencing. So the, I believe your honor the section that you're referring to is in when the post conviction court made its oral ruling on the pro se post conviction petition, he was laying out that this was not a de facto life sentence, and I'll get to the page the exact page that you're talking about because I do know what you're referring to your honor, and he is eligible for parole, it is that the distance. That was, but that is not a correct statement is not eligible for record. 332 39. Yes, your honor we we argued in that part that reading in the context of that his of the court's entire statement. He was merely indicating that the sentence was not a buffer per se life sentence rather than a term of years. Sir, but our legislature did not limit its new law to people who are serving life sentences. It said, anybody who's been sentenced for murder is the opportunity for parole after 20 years. Yes, referring to the new sentence except for Robert Schultz and anybody who was sentenced before 2019. That's correct that new sentencing law does say that it's only effective after 2019, and it also does not say anybody who sends to life, or for years. Any juvenile homicide defendant. No, but in this particular matter your honor, because the petitioner premised his argument on Miller, we're then looking at the Miller line of cases and the door. Really, I appreciate your position, and I understand it, but Miller was a two part decision everybody wants to focus on the life. And we keep forgetting that the whole reason for the life part was the rehabilitation part that youth offenders must be given an opportunity to demonstrate rehabilitation, and that has been part of Illinois license what 1869 or something. So, I just, I'm constantly amazed that people will focus so much on what is a life sentence, a life sentence 75 years 45 years 55 years 40 years the only spring for says 40 years. Right. Miller didn't see that Miller said, you can't have the possibility of parole. If you get a life sentence, because rehabilitation is important and then in every case after that, they have made the importance of rehabilitation, a cornerstone of their decision. So, what we're talking about rehabilitation here, and the Illinois legislature's efforts to encourage good behavior in prison to encourage and recognition and rewards for that. There's no term of life involved. There's no, there's no term of years and it could be for any term of years. Yes, Your Honor. Could you repeat your specific question. Well, you're saying that he because he based his argument on Miller. He can only be, he can only, it can only be used if you were sentenced to life or an online 40 years or more. And I'm saying, because he bases his argument on Miller and truth in sentencing, you can use it for any term of years, because the whole basis of Miller and everything that followed it was that they have to be given an opportunity to get these juveniles and emerging adults are clueless. We all know that anybody here have a teenage boy for a son. We know they're clueless. They do don't be things and so the Supreme Court recognize that the legislature recognize that emerging scientific research recognizes that and says, we have to give these young men a chance to demonstrate that they have been the ability to get out of jail free for they have to prove it. You have to work hard to prove that they have themselves. But if they do that, there's no work for doing it. And why do we want to do that because we don't want to lock up people for 80 years who are no longer going to be committing crimes. So, so if I follow your honor what you're asking me is whether or whether or not under their truth and sentencing. We are sort of foregoing the rehabilitative aspect by saying your sentence is 100%. What I'm actually it's not a question what I'm saying is the truth and sentencing Act, which everybody including President Clinton who signed it says now was a big mistake, says, you have to serve 100% of your guilty murder. And that was applied to juveniles tried as adults in Illinois, under a very bogus system that allowed states attorneys without any oversight to transfer cases to adult court. Okay, fine. We're past that. Now we've got Schultz in front of us he was 17 at the time of this horrible crime. He admits it was a horrible crime, I admit it was horrible crime, everybody admits it was a horrible crime. But we also have a chance to look at whether or not he has demonstrated some rehabilitative potential. And that would be that can't be before 20 years. Well it's like you said you guys stay in for 20 years. But after 20 years you should get an opportunity to go to the pro board and say, look, look at all these things I've done, I've been good I haven't got any marks against me I behave myself, I'm rehabilitated, let me out, and the pro board would make an informed decision. I think that that applies whether you get a sense of 25 years 30 years 40 years 39 years 37 years. I think it applies to any sentence of the juvenile homicide defendant, my colleagues don't agree with me but that's that's what I think because I think that rehabilitation is such an important part of how we're dealing with these emerging adults. And you're saying it only counts. It can't count because Miller was only about life sentences. And I'm saying that I don't agree with you. Let me let me follow up and just purchase these questions. If, for purposes of answering my question. Agree that justice but just these taken Miller that it applies to every juvenile sentence. Not just over in Illinois 40 years. What would our ruling change. If Miller applied if you are you saying in conjunction with the with the latest sentencing law, not the latest. We can't apply the latest. Right. Okay. So we're talking about this case. Okay. Assuming that Miller applies to every juvenile conviction. Does that mean that Chelsea gets this second stage here. I don't believe so, Your Honor, because in this case, he under Dorsey he did not receive a de facto life sentence. No, no, but if, if we take away that what I'm trying to say is, is that the fulcrum of this whole case, because if you're saying the reason what distinguishes this case from what justice participants are doing is life sentence. And what I'm trying to take away is that issue, I take away that issue, then, then justice participants correct that you're entitled to have an opportunity for parole is that that's what we take away the de facto life as take away the fact of life than this, then this sentence would be would have to go to second stage. I suppose hypothetically if you're saying that it's a hypothetical but but I mean because I know you're not going to recognize that as the law and I'm not saying it is, I'm just saying, if we, if we assume justice participants arguing, then that, let's say that is that's the way the law looks like. Okay. I mean, that to me seemed to be the fulcrum between the differences between the two arguments here. That's what I'm trying to get down to, or is there something else there with regard to Illinois law or federal law that still would prohibit this case going to second stage. Well, I think one of the cases that we cited in our emotion to say additional authority Richmond I do realize is a rule 23 so it's just persuasive authority at this point, Your Honor, but I do think that they discussed the idea and Richmond that even though the proportionate penalties provides greater protection, which I, if I'm following you, which is where I believe you're going with this that with rehabilitation proportionate penalties provides greater protection. The cases are still in a way, they're still crossing paths with the Dorsey and Miller lines when these claims are made. So if you take away Dorsey and say there's no longer de facto life sentences, then you're basically just looking at proportionate penalty on its own is the way I would look at it, and then you're looking to see does this shock the moral sense of the community. And this was briefly touched on in our brief as well, that the court here did have some discretion. They didn't have to sentence. Mr Schultz to 25 years they could have gone below that they could have disagreed with the firearm enhancement dismissal so there was some discretion there for the court and the court still chose to accept the 25 year plea so I hope I'm left with just is this a violation of the proportionate penalties and in this particular matter for the senseless shooting. And you're right Mr Schultz and his petition does acknowledge his actions and he does acknowledge it was senseless but it's it's still an innocent victims life and five years above the minimum. It doesn't shock the moral sense of the community. Okay, thank you very much. You have the sense of my question. Okay. Your Honor, there's no more questions. I believe we covered our three reasons that we're asking your honors to affirm the summary dismissal under Jones under waiver and then of course under the petitioners lack of a de facto life sentence so with that your honors we would rest on our brief and argument set forth today. Thank you very much. Thank you. Mr Steinberg. Just assignment, please the court. This is not an easy case, despite the fact that Schultz to not receive a life sentence. And despite the fact that you did not receive a life sentence, the plain language or the proportion of penalties clause does not limit challenges to it, based on how long their sentences are the type of sentences, the age of the offender. There's no express discrimination against a de facto life sentence or non de facto life sentence in the proportion of penalties clause. Importantly, it stresses the ability of rehabilitation and Dorsey. And for the state to say that time, just provides an opportunity for rehabilitation is expressly ignoring the fact that the Illinois Supreme Court and Dorsey paragraph 63 said we reject the claim that earning that earning good time credit does not demonstrate rehabilitation or show readiness to re enter society, and the inmates behavior in prison tends to be indicative of his readiness and harbinger for future recidivism. They even quote the US Supreme Court, by saying that they that these good time credit are designed to help prison, and they play a major role. Good time credit and further institutional goal of modifying behavior and value and value systems to permit that defendants when they're released that they can live in society as rules. The state's asking us to the state's asking this court to say yeah. And we have the state argue about the importance of good time credit in Dorsey, and how it shows rehabilitative potential, and now it's asking this court to completely ignore that. There are decisions that were defendants have received less than 40 years including one I think earlier this week released by that this court, but in that, I think, in those cases, the defendants have an opportunity to show the rehabilitated potential here. Mr Schultz does not have the benefit of does not cannot show his rehabilitative potential, he does not receive any benefit, the state talks about the benefit of the bargain. And they said, oh, provides ample rehabilitation for read this bargain provides ample rehabilitation for read sorry this. The plea provides ample rehabilitation upper ample opportunity for rehabilitation, it does not without good time credit it deprives the state and deprives Mr Schultz of this valuable tool. And regarding waiver, you never waived his right to contest the constitutionality of the sentence on page 193 the PSI waiver is just a PSI waiver. Also, when I look through the plea colloquy on pages 206 or 216 where you discuss the sentence. I don't see a waiver of the right to have a plea. If you go back to Brady, which is cited in Jones, it talks about how waiver of a constitutional right must be known voluntary intelligent. That's why during plea colloquies judges discuss, they go over the right to jury trial, we're on your waving other claims here there are no such waiver on the record, but of course he's close. His back, his background, again, he's earned his GED certified tutor. And for these reasons, are there is there a question Justice Kagan. No. And for these reasons he has to an arguable basis that the deprivation of good time credit does not serve the sensing goals of the proportionate penalties clause. Thank you very much. Thank both of you for your briefs, and for your arguments will take the case under advisement, and before it's coming. Thank you very much.